## F. DIMMICK v. FRANCIS A. SEXTON.

ERROR TO THE COURT OF COMMON PLEAS OF BRADFORD COUNTY.

Argued March 22, 1889—Decided April 8, 1889.

(*a*) On the trial of an issue in pursuance of a rule to open a judgment on a note for $500, the defendant introduced evidence from which he claimed to have paid the judgment in small payments of money, in grain and by a final compromise made in 1885: the plaintiff admitted receiving two small payments, but denied the other payments alleged.

(*b*) In the charge, the court, after reciting the history of the notes and judgments thereon and the plaintiff's evidence in proof thereof, said that this entitled the plaintiff to recover if there were nothing else in the case. It then enumerated a number of the payments alleged to have been made by the defendant, stated that they amounted to $707, and then said: "I call your attention to these leading items, and it is for you to say whether the defendant by any possibility, can be mistaken in relation to what he testifies to."

(*c*) The court further charged that the settlement if really made was as binding as a full payment; that the question was, who had told the truth about it; that there was nothing against the plaintiff's character; that the jury should consider his evidence, and the evidence of the defendant and his wife and three other witnesses to the contrary, and should also consider the fact that a third person had testified to the defendant's admission in 1886, that he owed the plaintiff $500.

1. In this case, the verdict being for the defendant, on writ of error taken by the plaintiff claiming that the charge to the jury gave the impression that the evidence adduced by the defendant was more worthy of credit than that adduced by the plaintiff, the judgment was affirmed.

Before Paxson, C. J., Sterrett, Green, Clark and Williams, JJ.

No. 225 January Term 1889, Sup. Ct.; court below, No. 777 September Term 1886, C. P.

This was an issue in pursuance of a rule to open a judgment held by F. Dimmick against Francis A. Sexton.

The facts are sufficiently stated in the opinion of the court below.

Charge of Court below.

The court, WILSON, P. J., 4th district, holding special term, charged the jury as follows:

For a proper understanding of this case, and that you may be able to properly apply the evidence, I think best to call your attention to a short history of the case. On February 9, 1871, a note was given by this defendant to the plaintiff for $500, bearing interest from that day. It is conceded that that was for borrowed money. There is some dispute as to how much was paid on February 9, 1871, the evidence showing that some portion of it had been paid a little before that. That is not very material in this case. It is not disputed that the note was a fair settlement between the parties at that time, and that the note was owing by the defendant to the plaintiff, with interest, from February 9, 1871. This note was retained by the plaintiff until April 12, 1872, something over a year. At this time the plaintiff had a judgment entered upon this note for the sum of $500, noting that the interest commenced on February 9, 1871. This continued from April 12, 1872, until April 5, 1877. Then the parties executed an amicable scire facias to revive this judgment. The defendant consented, by this writing which has been given in evidence, that there was $686 due the plaintiff, and the prothonotary entered judgment in this court, and it remained so until April 3, 1882. On April 3, 1882, the parties again got together and the plaintiff wanting this judgment revived to continue its lien, they agreed between them that there was $764 due on this judgment, and both parties signed a paper, which was handed over to the prothonotary, and the prothonotary entered judgment in favor of the plaintiff and against the defendant, for that amount. This continued from April 4, 1882, till August 17, 1886, when the plaintiff issued a scire facias on this judgment for the purpose of reviving the judgment and continuing its lien. This scire facias was served upon the defendant, and on May 3, 1887, he came into court with an affidavit upon which a rule was granted upon the plaintiff, to show cause why these judgments should not be opened and the defendant let into a defence, the defendant alleging payment, in his affidavit. On October 9, 1887, this rule was made absolute, and the defendant let into a defence. Although there have been several judgments entered, the making of this rule absolute opens the whole matter

for the jury to determine how much, if anything, has been paid upon the judgment at any time since its entry, and to apply whatever payments have been made, as of the date when they were made. You will have to go through this whole account, and ascertain whether there is anything due from the defendant to the plaintiff.

The plaintiff, to sustain his allegation that this whole sum is owing to him, gave in evidence these several judgments. He gave in evidence the original note, and these two amicable revivals in which the defendant signed his name to papers stating that those revivals were correct; and he gave in evidence the judgments that were entered, and there he rested his case. That put the plaintiff in a situation to recover, in this case, $764, with interest on it from April 3, 1882, if there had been no other evidence in the case. That made him a prima facie case. It then devolved upon the defendant to satisfy you that he committed an error, or was led into an error in signing these two amicable revivals. It is his business to satisfy you in relation to the payments, and to satisfy you that it was not right for the plaintiff to have taken these revivals for the amounts that they were taken for, and that these revivals were wrong.

He testifies that these revivals were made at the request of the plaintiff, and that he refused to sign the revivals because there were certain payments which he testifies that he alleged to the plaintiff ought to be deducted from this judgment before he signed the revival. He says that the plaintiff told him that this was the way he did business, and that the way for him, Sexton, to do, was to keep an account of what he let him have, and when they came to settle this whole matter he would allow him everything he had paid, just as if this revival had not been made. That is the excuse Mr. Sexton makes for signing these papers. You will say how far that satisfies you upon that subject. Then Mr. Sexton, in order to satisfy the jury that he has paid this judgment, produces a book, and tells you that he commenced an account with Mr. Dimmick, and that whenever he paid him anything, he put it down in a book, and put down the date in his book; and he tells you that he has that book in his hand, and looks at it, and he goes through with various items which I will not call your attention particularly to, as I suppose a statement will be sent out with you

by the counsel. He testifies to you that he put it down in his book correctly; that he has kept that book, and the various items in his possession ever since, and that he not only put it down in a book, but that he made a duplicate book, one to keep in the house, for fear he might lose the one he carried in his pocket. He says that these items were put down at the time they were paid, and testifies in detail to every one of them.

[A few of these items it seems to me nobody ought to make any mistake about. It is for you to say whether men dealing in this manner would be likely to remember items of cash with as much accuracy as they would items of oats, corn, buckwheat, etc. He testifies that on October 20, 1871, he paid $60; November 11, 1872, $80; and that on February 15, 1873, his wife, under his directions, paid $30. You will remember that the wife also testifies to the fact of paying $30. He testifies that he paid the plaintiff $7, cash, May 10, 1874. The defendant testifies that he paid the plaintiff $60, at the Kirby bank, in cash. March 12, 1881, he says he paid the plaintiff cash $200. February 7, 1882, he says he paid him cash $150. These cash items amount to about $707. I call your attention to these leading items and it is for you to say whether the defendant by any possibility can be mistaken in relation to what he testifies to. If I remember correctly, the plaintiff testifies that he never received a single dollar to apply on this judgment, except two payments, one of $40 and one of $60. To corroborate the defendant in relation to these items of payment, the wife of the defendant comes upon the stand, and she says that this plaintiff came every year, regularly; and that, while she cannot tell in detail what he got, nor how much he received each time, she speaks of his getting everything that they raised upon the farm, as she understood, to apply on this judgment.][1] You will say how far this ought to corroborate the statements and the testimony of the defendant. I will call your attention to another matter bearing upon this subject, very soon. . . . . . You will also remember that the plaintiff testifies that he has never received but two payments, one of $40 and the other of $60. There is another important item in this case that deserves considerable consideration, and the jury may take all these things into consideration, in order to get at the right of this thing. The defendant alleges that

about the first of January, 1885, Mr. Dimmick came to his house, and they got to talking about this matter, and that they did not agree, and that finally Mr. Sexton said to Mr. Dimmick, " What will you take to settle this whole affair ? " Dimmick then said that he would take $100 in money and 100 bushels of oats, and settle this whole thing, and satisfy. this judgment.

Now, it can hardly be doubted, but that is a matter for the jury, entirely, whether Mr. Sexton can be mistaken in regard to what he is testifying about, if he wants to tell the truth. He says that Mr. Dimmick proposed to take $100 and 100 bushels of oats, that he paid him the $100, and that this man came and drew away the oats, in five loads, and got more than he ought to have, and that he said that after they were weighed he would settle and pay him for what there was more than the 100 bushels. That is the testimony of Mr. Sexton. Mrs. Sexton was at home, at that time, and she says that she recollects this transaction, and that it occurred as Mr. Sexton says, and she says that she furnished part of the money to make up the $100, and that she took it out of money that she got from the government, and that Mr. Sexton paid him the $100 and that Mr. Dimmick took it away with him, and that he afterwards got the oats. And Della Doty, a married daughter of Mr. Sexton tells you that she was there, and that she heard this conversation, and heard the offer made by Mr. Dimmick to take $100 and 100 bushels of oats and satisfy this judgment. And Clarence Doty, her husband, tells you that he was there, and that he heard the same conversation, and he testifies substantially to the same that his wife says. And Cora Forbes, another daughter, says that she was at home, and that this was just what occurred, and they all say that they saw the $100 paid. · Mr. Dimmick says that no such thing occurred there, and that he didn't get a dollar. He says that he was there and got some oats, and that those oats were applied upon another note, and that they didn't pay the note.

Mr. Shoemaker: I think Mr. Dimmick says that it was to apply on the $80 note, and the balance, if anything, was to apply on the judgment.

By the court: If that is true the jury will remember it. On May 26; 1882, there was about $10 due, by Mr. Dimmick's

Charge of Court below.

own statement, on this $80 note. And he says that at that time $3 was paid, which left only $7, and that February 19, 1885, $1 was paid which left only $8.08 due, so that at the time this 100 bushels of oats were paid there was only about $8 due on this $80 note. You will remember what Mr. Dimmick said as to how the balance should apply. [Now, if you think proper to adjust this matter by this evidence of settlement, I may say to you that it makes no difference whether the parties settled right, or wrong.

If they thought proper to jump at a settlement, they had a right to do so and it binds them as much as if there had been a full computation and payment. If that settlement was offered by one, and accepted by the other and paid by the defendant, it stands the same as if the account had been settled dollar for dollar and cent for cent. The important thing about this matter of settlement is, who has told the truth about it? We ought to be just as charitable as we can, towards all persons who come here as witnesses. This plaintiff has come here and there is nothing against his character, so far as we know. You saw him on the stand, and you have a right to judge from his appearance on the stand, as well as from what he says. And you will also consider this evidence of Sexton and his wife, and Della Doty, and Clarence Doty, and Cora Forbes, five of them, and say which has told the truth, in relation to this settlement. And in this connection you ought to take into consideration what is regarded, and perhaps may be of some consequence here, that Mr. Allen testifies that Mr. Sexton, in 1886, told him that he owed Mr. Dimmick $500. You will remember the whole of Mr. Allen's testimony. He says that he had no particular interest in the matter, but that he happened to ask that question, and that that was the reply.] [2] Now, we are here to examine this case, and to determine it according to the truth, and we are here for no other purpose. It is one of those peculiar cases that it is the province of the jury to settle, and you cannot give this case any too great or any too fair consideration. To me it is evident that this man, the plaintiff, is here acting the Shylock, and endeavoring to rob this family by collecting this judgment twice, or else it is a conspiracy by this family to defraud the plaintiff of an honest debt. The duty devolves upon you to

Syllabus.

ascertain which of these parties have told the truth, and when you have done that you will have very little difficulty in settling the question. If you fail to ascertain the truth of this matter, then you might better have staid at home. That is your duty and not mine. If you find that there is anything due on this judgment, you will find in favor of the plaintiff for that amount. If you find that it has been paid, you will simply say that you find for the defendant.

Verdict for the defendant, Sexton, and judgment thereon.

The plaintiff complained that the court in the whole charge to the jury gave the impression that the evidence of the defendant was more worthy of credit than that of the plaintiff, and therefore took this writ, assigning for error the parts of the charge embraced in [ ] [1] [2]

Mr. *H. F. Maynard* (with him Mr. *J. F. Shoemaker*), for the plaintiff in error.

Mr. *H. J. Madill*, for the defendant in error.

PER CURIAM:

Judgment affirmed.